## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **RAYMOND JAMES & ASSOCIATES, INC.,** | ) | **Case No.: 1:25-cv-00010** |
| | ) | **U.S. District Judge Matthew W. McFarland** |
| **TIMOTHY VANBENTHUYSEN,** | ) | |
| | ) | |
| **RICHARD REDVANLY,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AGAINST DEFENDANT PAUL T. SABA, JR.** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **PAUL T. SABA, JR.,** | ) | |
| | ) | |
| **Defendant.** | | |

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs Raymond James & Associates, Inc. (hereinafter "Raymond James"), Timothy VanBenthuysen, and Richard Redvanly (hereinafter, collectively, "Plaintiffs"), by and through undersigned counsel, hereby respectfully request that the Court issue a temporary restraining order and preliminary injunction against Defendant Paul T. Saba, Jr. As set forth more fully in the memorandum in support, which is attached hereto and expressly incorporated herein by reference, good cause exists for the Court to grant this extraordinary relief, as a temporary restraining order and preliminary injunction are necessary to prevent immediate and irreparable injury, loss, and/or damage. Specifically, a temporary restraining order and preliminary injunction is necessary to stop Defendant from perpetrating an extreme, malicious, harassing, abusive, and defamatory email campaign that (1) has included emailing *hundreds* of people, including colleagues, competitors, clients, and friends of the Plaintiffs and falsely depicting the

1

Plaintiffs as criminals and Neo-Nazis, and (2) has damaged and continues to damage the Plaintiffs.

As set forth more fully in the following memorandum in support, Plaintiffs move this Court for a temporary restraining order and preliminary injunction enjoining Defendant from:

(1) Sending via electronic telecommunications, from any email account, any emails or other communications concerning Plaintiffs, any other employees of Plaintiff Raymond James, or any significant others of Plaintiffs Timothy VanBenthuysen and Richard Redvanly;

(2) Publishing defamatory material about Plaintiffs, employees of Plaintiff Raymond James, or any significant others of Plaintiffs Tim VanBenthuysen and Richard Redvanly;

(3) Coming within 100 yards of: (a) Plaintiffs Tim VanBenthuysen and/or Richard Redvanly, (b) the personal residences of Plaintiffs Timothy VanBenthuysen and Richard Redvanly, and (c) any Raymond James office; and

(4) Using any electronic device to delete or otherwise access the following: (a) any electronic files concerning Plaintiffs or (b) any email account used to transmit emails concerning Plaintiffs or any of their significant others.

Respectfully submitted,

/s/ **Ian D. Mitchell**
Andy J. Dorman
Ian D. Mitchell, Esq. (0090643)
REMINGER CO., LPA
525 Vine St., Suite 1500
Cincinnati, OH 45202
T: 513-721-1311
F: 513-721-2553
E-mail: IMitchell@reminger.com
**Counsel for Plaintiffs**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **RAYMOND JAMES & ASSOCIATES, INC.,** | ) | **Case No.: 1:25-cv-00010** |
| | ) | **U.S. District Judge Matthew W. McFarland** |
| **TIMOTHY VANBENTHUYSEN,** | ) | |
| | ) | |
| **RICHARD REDVANLY,** | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **PLAINTIFFS' MOTION FOR** |
| **Plaintiffs,** | ) | **TEMPORARY RESTRAINING ORDER** |
| | ) | **AND PRELIMINARY INJUNCTION** |
| **vs.** | ) | **AGAINST DEFENDANT PAUL T. SABA,** |
| | ) | **JR.** |
| **PAUL T. SABA, JR.,** | ) | |
| **Defendant.** | | |

## I.  INTRODUCTION

This case arises out of Plaintiffs' critical need to stop a campaign of extreme, ongoing online harassment, abuse, and defamation by Defendant Paul T. Saba, which he has perpetrated using fictitious email accounts and false information. Specifically, the Defendant – a severely disgruntled former intern exhibiting extreme and dangerous behavior – has been perpetrating an extreme, malicious, harassing, abusive, and defamatory email campaign that (1) has included emailing _hundreds of people, including colleagues, competitors, clients, and friends of the Plaintiffs and falsely depicting the Plaintiffs as rapists and neo-nazis_ and (2) has damaged and continues to damage the Plaintiffs.

On November 4, 2024, Plaintiffs learned about the first of a series of anonymous emails sent from certain fictitious accounts that sought to damage the reputation of Plaintiffs Timothy VanBenthuysen and Richard Redvanly and, by extension, their employer Plaintiff

Raymond James & Associates, Inc. ("Raymond James"). Over the course of the next two months, fictitious email accounts (including some impersonating Plaintiffs) continued to distribute false and malicious information concerning Plaintiffs, substantially increasing in frequency and audience. These emails caused Mr. VanBenthuysen and Mr. Redvanly great emotional distress and severely damaged their reputations, both within their profession – the investment banking community – and among their personal acquaintances, many of whom were direct recipients of the malicious, defamatory emails. In addition, Raymond James has suffered substantial business interruption/loss and there remains a significant concern that the email campaign is negatively impacting the company's public perception.

While the perpetrator of the damaging email campaign (the "Campaign") remained anonymous for nearly two months, Plaintiffs recently discovered his identity and are now seeking a temporary restraining order and preliminary injunction from this Court to stop the harmful conduct. In particular, Raymond James' Cyber Threat Center in its Office of Information Security (the "RJ Cyber Threat Center") has been monitoring and working to identify the perpetrator of this malicious campaign. Very recently, the RJ Cyber Threat Center was able to identify information linking at least four of these malicious emails to the Defendant who recently worked from June 2024 to August 2024 as a summer investment banking intern in Raymond James' Atlanta office, where both Mr. VanBenthuysen and Mr. Redvanly are based. At the conclusion of that internship, Defendant was notified that he would not be receiving a full-time offer of employment with Raymond James. Based on the totality of this information, it is almost certain that Defendant is responsible for, and the perpetrator of, the Campaign from its inception on November 4, 2024.

Because the volume of the false, malicious, abusive, defamatory, and damaging emails only increased in the time since November 4, 2024 (such that the most recent emails sent on January 6, 2025 reached hundreds of recipients – mostly competitors and prospective business clients of Plaintiffs – and falsely portrayed Plaintiffs as inviting them to join a "Neo-Nazi Bankers Club"), Plaintiffs respectfully submit that the Court's intervention and entry of an order granting a temporary restraining order and preliminary injunction is regrettably necessary at this time.

For the reasons set forth more fully in Plaintiffs' Verified Complaint, Plaintiffs are confident in a high likelihood of success in obtaining the relief requested in its initial pleading. Specifically, forensic information discovered by the RJ Cyber Threat Center yielded multiple data points linking Defendant to the fictious email accounts that sent the false and defamatory emails. An Order from this Court will not cause harm to any third-parties, but rather will protect the public at-large, including those other individuals maligned by the defamatory and malicious telecommunications harassment campaign being waged by Defendant.

Accordingly, Plaintiffs respectfully seek a temporary restraining order and preliminary injunction from this Court, specifically enjoining Defendant Paul T. Saba, Jr. from:

(1) Sending any electronic communications – from any electronic device or email account – regarding Plaintiffs, employees of Plaintiff Raymond James & Associates, Inc., or significant others of Plaintiffs Timothy VanBenthuysen and Richard Redvanly; and

(2) Publishing defamatory material about Plaintiffs, employees of Plaintiff Raymond James & Associates, Inc., or significant others of Plaintiffs Timothy VanBenthuysen and Richard Redvanly.

(3) Coming within 100 yards of: (a) the Plaintiffs Tim VanBenthuysen and Richard Redvanly, (b) the personal residences of Plaintiffs Tim VanBenthuysen and Richard Redvanly, and (c) any Raymond James office.

(4) Using any electronic device to delete or otherwise access the following: (a) any electronic files concerning Plaintiffs or (b) any email account used to transmit emails concerning Plaintiffs or any of their significant others.

For the reasons outlined above, as well as those shown more fully below, this Court should grant Plaintiffs' Motion and issue an Order temporarily restraining and enjoying Defendant to prevent further harm.

## II.    STATEMENT OF FACTS

Plaintiff Raymond James & Associates, Inc. is a public company that provides diversified financial services. (Verified Complaint, Doc. # 1, at ¶ 20). Plaintiffs Timothy VanBenthuysen and Richard Redvanly are employed at the Atlanta, Georgia office of Raymond James in its Healthcare Investment Banking group. (Id., at ¶ 21). Defendant was previously a summer investment banking intern at the Atlanta, Georgia office of Raymond James in the summer of 2024. (Id., at ¶ 22).  Defendant was not assigned to the Healthcare Investment Banking group during the pendency of his internship, but rather was assigned to a different group within the same office.  (Id.).  During Defendant's internship, Plaintiff Richard Redvanly was assigned to be Defendant's mentor. (Id., at ¶ 23). At the conclusion of his internship, Defendant was not offered a full-time position with Raymond James by the group with which he interned. (Id., at ¶ 22). After being notified that he would not be receiving a full-time offer, Defendant sent several emails to Mr. VanBenthuysen in August 2024 and September 2024 indicating his interest in a full-time position with the Healthcare Investment Banking group instead.  (Id., at ¶ 24). Mr. VanBenthuysen informed Defendant that there were no open positions but that he would keep him posted if that changed. (Id.).

6

On November 4, 2024, Plaintiffs learned that an email was sent from a fictitious email account (stein3350@gmail.com) and was addressed to multiple individuals at Raymond James, which included the following message:



(Id., at ¶ 26). This email from a fictitious account sent to Mr. Redvanly's colleagues thus explicitly accused Mr. Redvanly of criminal conduct, *i.e.*, insider trading. (See id.).

On November 24, 2024, Plaintiffs learned that two emails from two separate fictitious email accounts (markbalm202@gmail.com and robertsteinnews@gmail.com) had been sent to numerous individuals employed by Raymond James and also to individuals outside the company. (Id., at ¶ 27). The email sent by the markbalm202@gmail.com account to multiple recipients on November 24, 2024 was drafted to look like a news headline falsely stating that Mr. VanBenthuysen had been convicted of raping an 18-year-old. (Id., at ¶ 28). Similarly, the email sent by the robertsteinnews@gmail.com account to multiple recipients on November 24, 2024 was designed to look like a news headline falsely stating that Mr. Redvanly had been convicted of raping a 16-year-old. (Id., at ¶ 29).

Mr. VanBenthuysen and Mr. Redvanly's significant others were also targeted by this malicious Campaign. On or about December 1, 2024, Mr. Redvanly's girlfriend was targeted at her place of employment when an email was sent to members of her employer from the fictitious email account for "Robert Stein" with a message that accused Mr. Redvanly's

girlfriend of having committed criminal conduct by purportedly engaging in insider trading. (Id., at ¶ 30). A separate email was sent on December 1, 2024 by another fictitious and impersonated email account (gracebeckwith@outlook.com) to the girlfriend's college email address that alleged the sender ("Grace") was having a romantic relationship with Mr. Redvanly. (Id., at ¶ 31). On December 21, 2024, another fictitious email account (jack.maguir@yahoo.com) sent an email to numerous individuals internal and external to Raymond James to purportedly report that an email account impersonating Mr. VanBenthuysen's wife had sent an explicit email, which included a random explicit photo taken from the internet. (Id., at ¶ 36).

In fact, the perpetrator of the harassing and defamatory email campaign sent numerous emails falsely impersonating Mr. VanBenthuysen and Mr. Redvanly and depicting them as having viewed, possessed, and sent explicit content over the internet. On December 8, 2024, a false email thread was sent to multiple recipients both internal and external to Raymond James using Mr. VanBenthuysen (who is married) and another employee's names in throwaway Yahoo and Outlook accounts in order to imply that the two were having an affair. (Id., at ¶ 32). The December 8, 2024 false email thread included explicit images of random individuals and was further distributed by yet another false email account (harrissteinfeld@yahoo.com) to numerous external members of the investment banking community (again, Plaintiff's competitors) and other Raymond James employees. (Id., at ¶ 33). On December 15, 2024, another fictitious email account (arjunpatelphilly@outlook.com) sent a false email to numerous individuals purporting to be reporting an explicit communication between Mr. VanBenthuysen and another Raymond James employee to numerous recipients both internal and external to Raymond James. (Id.,

at ¶ 34). This harassing, defamatory, abusive, and damaging conduct continued throughout the month of December 2024, during which time the anonymous attacker used multiple other impersonated email accounts to harass, defame, and falsely portray Plaintiffs. (Id. at ¶ 35).

As a result of this barrage of emails, the escalating nature of the attacks, and the security threats they posed, Plaintiff Raymond James was forced to close its Atlanta investment banking office on January 7 and 8, 2025, which caused significant business loss and interruption. (Id., at ¶ 37). Because of Defendant's unlawful conduct, Plaintiffs' reputations – both as professionals and personally – have been greatly damaged. (Id., at ¶ 38). Furthermore, as a result of Defendant's false email Campaign, Plaintiffs have had to expend significant financial resources and efforts to repair the damage to their reputations and to determine the source of the false emails. (Id., at ¶¶ 39-40).

On December 30, 2024, an email account impersonating a Raymond James employee sent an email to several dozen recipients external to Raymond James, including other investment bankers, business contacts, and prospective clients, purporting to invite those recipients to join a bogus Neo-Nazi club for bankers. (Id., at ¶ 41). The December 30, 2024 email invited responses to be sent to Mr. VanBenthuysen's actual email address with Raymond James and attached a PDF file of the Neo-Nazi invitation featuring a swastika and including other morally repugnant information. (Id., at ¶ 42). While deplorable and damaging in its content, this December 30, 2024 email finally provided the RJ Cyber Threat Center with an opportunity to learn the identity of the perpetrator of these harassing, defamatory, abusive, and damaging attacks, (Id., at ¶ 43). Specifically, the metadata for the

PDF attachment to the December 30, 2024 email shows that it was created on December 29, 2024 and that the author of the Neo-Nazi Banker Club invitation is "Paul Saba". (Id., at ¶ 44).

On January 3, 2025, Defendant sent a similar Neo-Nazi themed email from another false, impersonated account (tim.vanbenthuysen@yahoo.com) purporting to belong to Mr. VanBenthuysen that was sent to over 200 recipients in the finance and investment banking fields. (Id., at ¶ 46). Similar to the PDF attachment to the December 30, 2024 email, an examination of the metadata to the "Banker club.pdf" attachment to the January 3, 2025 email established that the author of the Neo-Nazi Banker club invitation was Defendant Paul Saba. (Id., at ¶ 47). The RJ Cyber Threat Center was also able to discover that the recovery number listed for the fictitious tim.vanbenthuysen@yahoo.com email account, as shown on Yahoo's password recovery website, is "(5**) ***-**10". (Id., at ¶ 48). The RJ Cyber Threat Center compared the disclosed digits from the recovery number for the tim.vanbethuysen@yahoo.com account to the phone number listed on Defendant's resume that he sent to Mr. VanBenthuysen at the end of his internship when he was trying to obtain an offer from Mr. VanBenthuysen's group, which indicated a match of those numbers. (Id., at ¶ 49).

As the RJ Cyber Threat Center continued to assess the source of the harassing emails from the fictitious accounts, additional data points pointed to Defendant as the perpetrator behind the coordinated and wide-reaching email Campaign against the Plaintiffs. (Id., at ¶ 50). For example, the recovery email address for the tim.vanbenthuysen@yahoo.com account is listed as h*****ld@yahoo.com, which contains similar lettering to the harrissteinfeld@yahoo.com address, which was used as part of the Campaign to send false, harassing, defamatory, abusive, and damaging emails about Plaintiffs on December 8, 2024.

(Id., at ¶ 52). This showed that multiple email accounts used as part of the harassing, defamatory, abusive, and damaging email Campaign against Plaintiffs were connected to each other and shared a common recovery phone number, which matched Defendant's phone number. (Id., at ¶ 53).

When another false and damaging email was sent by a different fictitious/impersonated email account on January 6, 2025, it attached a PDF file containing an invitation to join a bogus Neo-Nazi Bankers Club, which enabled the RJ Cyber Threat Center to again analyze the metadata to determine authorship. (Id., at ¶ 54). The metadata for the PDF file attached to the January 6, 2025 email – like the metadata of the previous PDF files – indicated that the author was Defendant Paul Saba. (Id.). In addition, the recovery email address for the email address timvanbenthuysen.rj@yahoo.com, which was used to send the January 6, 2025 email, is listed as "t*****en@outlook.com", which contains matching lettering and ordering as the tim.vanbenthuysen@outlook.com email address that was previously used in a December 8, 2024 email attack which the evidence now shows was authored by Defendant.

In the afternoon of January 6, 2025, Raymond James' Head of Litigation sent a Cease & Desist Letter to Defendant by email (and sent the same letter by UPS the next day), demanding that he immediately cease and desist his email campaign intended to harm, defame, and/or impersonate Raymond James employees and individuals associated with the company. (Id., at ¶ 52; Exhibit A to Verified Complaint, 1/6/25 Cease & Desist Letter to Paul T. Saba, Jr.). Defendant confirmed by phone the same day that he received the Cease & Desist Letter. (Plaintiffs' Verified Complaint, at ¶ 56).

### III.    LAW & ARGUMENT

Plaintiffs seek immediate relief from this Court to ensure that Defendant is stopped from further engaging in a harassing, abusive, defamatory, and damaging email campaign to attack the reputations of Mr. VanBenthuysen and Mr. Redvanly and otherwise damage Raymond James's business and reputation.

### A.    Legal Standard for Temporary Restraining Order and a Preliminary Injunction

A temporary restraining order and preliminary injunction is appropriate to protect the relative interests of the Parties while the parties conduct discovery and until the Court can fully review or rule on the issues.

Rule 65 sets forth the requirements a movant must meet when seeking and/or obtaining a temporary restraining order and preliminary injunction from this Court. Fed. R. Civ. P. 65 (a)-(b); *see also* S.D. Ohio Civ.R. 65.1. In pertinent part, the movant must establish "specific facts in an affidavit or verified complaint clearly showing that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Second, the applicant's attorney must certify to the court "in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Substantively, federal courts generally consider four (4) factors when deciding whether to grant a motion for temporary[1] and/or injunctive relief: "(1) whether the movant has established a substantial probability of success on the merits; (2) whether the movant would suffer irreparable harm in the absence of an injunction; (3) whether an injunction

---

[1] In order to obtain a temporary restraining order, a party must establish the same elements as are necessary to warrant the issuance of a preliminary injunction.

would substantially harm third parties; and (4) whether an injunction would serve the public interest." *Tri-County Wholesale Distribs. v. Wine Grp., Inc.,* No. 2:10-cv-693, 2010 U.S. Dist. LEXIS 92598, *3 (S.D. Ohio Sep. 2, 2010). Importantly, these factors "are not prerequisites to injunctive relief; rather, the Court must balance them to determine whether they weigh in favor of granting a TRO or injunction. *Libertarian Party of Ohio v. Husted*, No. 2:13-CV-953, 2014 WL 12647018, at *1 (S.D. Ohio Sept. 24, 2014) (citing *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)). The moving party bears the burden of justifying the issuance of an injunction, including showing likelihood of success and irreparable harm. *Id.* Here, Plaintiffs satisfy each requirement by a wide margin.

### B. Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction Should Be Granted.

At the time of this filing, Plaintiffs have satisfied their procedural preconditions of verification (see Plaintiff's Verified Complaint, Doc. # 1), and sufficient notice of their request for temporary relief (see Certification, attached hereto as Exhibit A). Fed. R. Civ. P. 65(a)-(b); *see also* S.D. Ohio Civ.R. 65.1. As such, Plaintiffs ask this Court to use its discretion and authority to protect them from this ongoing and malicious Campaign seeking to impugn their reputation and business by restraining and enjoining Defendant from his intentional, tortious, and/or illicit conduct against them. Defendant's clear violations of law warrant this Court's intervention, consideration, and discretion for the determination of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

#### 1. *Plaintiffs Will Suffer Irreparable Injury and Damage if a Temporary Restraining Order and Preliminary Injunction Are Not Granted.*

Without an Order from this Court, Plaintiffs will continue to suffer immediate and irreparable injury and damages to their reputation and business.

"A sufficient showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction' and receives 'increased emphasis' as a factor within the temporary restraining order context." *Candid Ventures, LLC v. Nestlings, Inc.*, No. 1:24-cv-528, 2024 U.S. Dist. LEXIS 177308, at *9-10 (S.D. Ohio Sept. 30, 2024) (citing *Blount Pride, Inc. V. Desmond*, 690 F. Supp. 3d 796, 807 (E.D. Tenn. 2023)). Generally, in weighing a request for injunctive relief, "[i]rreparable harm results where there is no adequate remedy at law." *Hill Distrib. Co. v. St. Killian Importing Co.*, No. 2:11-CV-706, 2011 U.S. Dist. LEXIS 100545, *12 (S.D. Ohio Sep. 7, 2011). Thus, a plaintiff's harm is irreparable if it cannot be fully compensated by money damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992); *see also Hill Distrib. Co. v. St. Killian Importing Co.*, 2011 U.S. Dist. LEXIS 100545 at *12. The Sixth Circuit has held that "**the loss of customer goodwill often amounts to irreparable injury** because the damages flowing from such losses are difficult to compute." C*ertified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007) (emphasis added), quoting *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992).

These are the exact injuries that Plaintiffs will suffer if Defendant is able to continue his malicious attacks. For instance, the most recent emails sent just four days ago on January 6, 2025, invited recipients to join a "Neo-Nazi Bankers Club" and reached hundreds of individuals, including members of the investment banking community who compete with Plaintiffs and prospective clients. This attack harms the established positive personal and professional reputations that Plaintiffs have achieved and not only harms them through loss of profit, but also their customer goodwill. However, this is only one example of the many instances that Defendant has caused irreparable harm through his vengeful attacks. Other

instances include falsely reporting that both Mr. VanBenthuysen and Mr. Redvanly have been convicted of raping a young women and impersonating Mr. VanBenthuysen and Mr. Redvanly and depicting them as having sent explicit content over the internet. Therefore, the harm done to Plaintiffs cannot be fully compensated by monetary damages and outweighs any harm that Defendant would suffer from being restrained from continuing to injure Plaintiffs.

### 2. *Plaintiffs Have a High Likelihood of Success on the Merits.*

"The moving party need only show a likelihood of success on the merits on one claim where there are multiple claims at issue in the complaint." *Candid Ventures*, 2024 U.S. Dist. LEXIS 177308, at *7. For the limited purposes of seeking this TRO, Plaintiffs need only focus on their claim for defamation.

Under Ohio law, defamation occurs when "a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in her trade, business, or profession.'" *O'Malley v. NaphCare Inc.*, 101 F. Supp. 3d 742, 751 (S.D. Ohio 2014) (citing *Jackson v. Columbus*, 2008-Ohio-1041, ¶ 9). The elements for a defamation claim under Ohio law require Plaintiffs to demonstrate "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Id.*

Defendant has unequivocally published numerous false statements for the sole purpose of exposing Plaintiffs to public shame and causing injury to Plaintiffs' reputation.

Defendant concocted an elaborate smear campaign composed of false portrayals of Plaintiffs' employees as convicted rapists and numerous false allegations of insider trading, extramarital affairs, transmission of explicit sexual images, and promotion of a morally repulsive hate group. Notably, these attacks were specifically targeted at causing significant and irreparable damage to Plaintiffs' reputation as a business and in their individual capacities as professionals.

The evidence amassed because of the cyber investigation undeniably demonstrates that these were the conscious acts of one individual far in excess of mere negligence. Finally, special harm is not at issue in this case. A publication is actionable *per se* and a plaintiff need not show special harm if it contains written statements which falsely charge plaintiff with the commission of a crime. *Shafer v. Karric Square Props., LLC*, No. 2:17-cv-1098, 2019 U.S. Dist. LEXIS 47021, at *21 (S.D. Ohio Mar. 21, 2019). As several of Defendant's emails contain false allegations charging Plaintiffs with the commission of a crime, this element is also satisfied.

Similarly, Defendant's conduct – as unmasked by the RJ Cyber Threat Center through its forensic investigation – facially satisfies the statutory requirements for the crime of telecommunications harassment. Ohio Revised Code § 2917.21 makes it a crime to engage in telecommunication harassment and specifically states that "No person shall make or cause to be made a telecommunication, or permit a telecommunication to be made from a telecommunications device under the person's control, with purpose to abuse, threaten, or harass another person." Furthermore, R.C. 2307.60 creates a civil cause of action for damages resulting from any criminal act, unless otherwise prohibited by law. Taken together, a plaintiff can bring a claim for telecommunications harassment under Ohio law if they have

16

suffered damages from the criminal conduct of another. *See Crenshaw v. Howard*, 2022-Ohio-3914 ¶ 19 (8th Dist.).

Here, there can be no serious question that Defendant's use of fictitious email accounts to spread nefarious lies and defamation concerning Plaintiffs was done to "abuse, threaten, or harass" the Plaintiffs and those close to them. Given the evidence collected by the RJ Cyber Threat Center, as outlined in the Verified Complaint, which connects Defendant to the false email campaign, Plaintiffs have a strong likelihood of succeeding on the merits of their civil cause of action for damages arising from Defendant's violation of R.C. 2917.21.

Plaintiffs have demonstrated, through clear evidence, a high likelihood of success on the merits in obtaining the relief sought in their initial pleading.

### 3. A Temporary Restraining Order Will Not Cause Substantial Harm to Others.

The third factor in determining whether a TRO should be granted is the potential for harm to Defendant if the injunction were granted. This factor weighs heavily in favor of Plaintiffs.

Here, Plaintiffs seek a temporary restraining order enjoining Defendant from the affirmative acts of distributing email communications and publishing defamatory material as it relates to Plaintiffs, Plaintiffs employees, and significant others. The only potential harm in this case is the slight restriction of Defendant's ability to use his email to impersonate and maliciously target Plaintiffs and reasonable and narrow restrictions on his ability to approach Plaintiffs and individuals associated with them and Raymond James offices and its employees. However, the Defendant has no purposeful relationship to Plaintiffs – as merely a former summer intern – and thus he lacks justification for making any future contact with or about them.

Furthermore, any harm caused by injunctive relief may be discounted "where there is evidence that the defendant knowingly and illegally placed [himself] in a position to be harmed by injunctive relief." *Williams-Sonoma Direct, Inc. v. Arhaus, LLC,* 109 F. Supp. 3d 1009, 1021 (W.D. Tenn. 2015) (quoting *Brake Parts, Inc. v. Lewis*, 443 Fed.Appx. 27, 33 (6th Cir.2011). Such is certainly the case here because Defendant can have no justification for creating and distributing false information through emails from fictitious accounts. Accordingly, any potential harm that could inure to Defendant as a result of injunctive relief represents rights forfeited by virtue of Defendant's intentional commission of unlawful, harassing, and defamatory acts. Therefore, the harm caused to Plaintiffs as a result of Defendant's affirmative acts substantially outweighs any potential harm caused by injunctive relief.

### 4. Public Interest Will Be Served by the Issuance of a Temporary Restraining Order.

The fourth factor to be considered by the Court is whether the temporary restraining order will unequivocally serve the public interest. Restraining Defendant from continuing his attacks will serve the public interests by (1) giving effect to criminal laws Defendant is violating; (2) protecting Plaintiffs' actual and prospective clients and customers; and (3) preventing the public from receiving unsolicited emails that are disgusting, alarming, and defamatory.

First, giving effect to duly enacted laws serves the public interest. *Tri-County Wholesale Distribs. v. Wine Grp., Inc.*, 565 F. App'x 477, 484 (6th Cir. 2012). As detailed in the Verified Complaint, Defendant has committed conduct that amounts to criminal behavior for telecommunications harassment under Ohio's law. Defendant's confirmed role in creating and distributing blatantly false and damaging emails – in several instances

18

impersonating the Plaintiffs – in order to substantially damage their reputations and cause emotional distress demonstrates a fundamental disrespect for the law. Defendant's acts of deception are of such an egregious nature that the State of Ohio found fit to criminalize it by statute. Therefore, stopping Defendant from continuing his illegal acts will further enforce criminal law and protect the public's interest.

Second, the actual and prospective clients and customers of Plaintiffs have a strong public interest in the granting of the temporary restraining order. Plaintiffs are investment bankers who deal with significant financial transactions, and Plaintiff Raymond James also has a very large wealth management business which involves holding custody and investing over a trillion dollars of clients' money. Defendant's actions have caused uncertainty, confusion, and mistrust in the investment banking and wealth management operations of Plaintiffs. Diminishing this anxiety for actual and prospective clients would enforce their trust in their decisions to work with Plaintiffs. Furthermore, to continue dealing with the security threats and other impacts of the emails, Plaintiffs must interrupt their services to the clients. Stopping Defendant's actions will allow Plaintiffs to continue faithfully serving their clients and providing services to prospective clients. Therefore, the clients and prospective clients have a strong interest in the granting of this temporary restraining order.

Third, there is a very strong public interest in preventing the public from randomly receiving the types of communications that underlie this case. Those communications are vile, disturbing, alarming, and serve no public benefit whatsoever, and it is unequivocal that the public has a very strong interest in making sure these types of communications are stopped.

Accordingly, there can be no question that the public interest would be served by prohibiting Defendant from continuing his harassment Campaign.

### 5. *Plaintiffs Have Given Notice of This Motion.*

Counsel for Plaintiffs have given notice of this Motion to Defendant Paul T. Saba, Jr., in addition to their Verified Complaint. (Certification, attached hereto as Exhibit A; Plaintiff's Verified Complaint, Doc. # 1). Specifically, Plaintiffs attempted to personally serve a copy of Plaintiffs' Verified Complaint and this Motion on Defendant Saba on January 10, 2025 via a process server employed by LSS. (See Exh. A, Certification). Plaintiffs also gave notice of the filed Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction by emailing a copy to his known and confirmed email addresses on January 10, 2025. (Id.). On January 12, 2025, Defendant's father responded by email, which confirmed the email containing the pleadings and motion had been received. (Id.).

### C. The Court Should Order That a Nominal Bond Be Posted.

Under Fed. R. Civ. P 65(c), "no restraining order or preliminary injunction shall issue except upon the giving of surety by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained."

Here, Defendant will suffer no damages during the pendency of a restraining order. Defendant will only be temporarily prohibited from further attempts to send emails concerning any of the Plaintiffs, their colleagues, or their significant others. Defendant will otherwise be able to continue life as normal, without interruption, including the use of email for purposes entirely unrelated. In the same spirit, prohibiting Defendant from coming within 100 yards of any of the Plaintiffs, their residences, their significant others, and any

20

Raymond James office will not pose a hardship on Defendant because he has no cause to be in the vicinity of any of them. Lastly, prohibiting him from using his electronic devices to delete or otherwise access electronic files concerning Plaintiffs or any email account he used to transmit emails concerning Plaintiffs or any of their significant others is consistent with the Federal Rules of Civil Procedure concerning a party's obligation to preserve evidence relevant to a pending matter.

As a result, this Court should order only a nominal bond be posted to effectuate the temporary restraining order sought by this Motion.

**IV.**  **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction should be granted.

Respectfully submitted,

*/s/ **Ian D. Mitchell***
Andy J. Dorman
Ian D. Mitchell, Esq. (0090643)
REMINGER CO., LPA
525 Vine St., Suite 1500
Cincinnati, OH 45202
T: 513-721-1311
F: 513-721-2553
E-mail: IMitchell@reminger.com
***Counsel for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been electronically filed this 13th day of January, 2025 through the Court's CM/ECF system. Notice of filing will be automatically sent to all counsel (and their designees) who have entered their appearance of record and who are registered with this Court's CM/ECF system. Such notice constitutes service by rule. In addition, I also hereby certify that the foregoing will be served electronically (via email) to all other counsel of record who will not receive notice of this filing through the CM/ECF system, including:

/s/ *Ian D. Mitchell*
Ian D. Mitchell (0090643)