**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **RAYMOND JAMES & ASSOCIATES, INC., ET AL.,** | : : : | **FILED UNDER SEAL** |
| Plaintiffs, | : : | Case No. 1:25-cv-00010 |
| v. | : : : | Judge Matthew W. McFarland |
| **PAUL J. SABA, JR.,** | : : : | |
| Defendant. | : | |

## AGREED ADDENDUM TO THE STIPULATED PROTECTIVE ORDER (DOC. #33) TO ESTABLISH A LIMITED ESI PROTOCOL

IT IS HEREBY STIPULATED, AGREED AND ORDERED pursuant to Rule 26 and Rule 29 of the Ohio Rules of Civil Procedure, that:

(a) The Stipulated Protective Order (the "Stipulated Order") entered on September 8, 2025, continues to generally govern the handling of all documents, testimony, and other information including all copies, excerpts, and summaries thereof (collectively, the "Material"), produced, given, or filed during discovery or other proceedings in this action ("Action"). (*See* Doc. #33).

(b) Plaintiffs collectively have requested, and Defendant has agreed subject to the terms provided herein, to make a clone ("Clone") of certain devices for forensic review (hereafter the "Forensic Review") available at the Plaintiffs' expense to HaystackID ("Haystack"). The Clone, the product any Forensic Review as well as the Search Results, if any (as defined below) are subject the Stipulated Order and shall be Confidential unless otherwise designated as provided herein.

Accordingly, the Plaintiffs and Defendant agree that the following additional criteria shall be

incorporated into the Stipulated Order to govern the Forensic Review (the "Agreed Addendum to the Stipulated Protective Order" or "Protected Order").

I. **DEFENDANT'S CELLULAR PHONES, OTHER DEVICES, AND WEB-BASED EMAIL**

The Defendant will make the Clone of his laptop computer hard drive (copy), desktop computer hard drive (copy), personal cellular phone hard drive (copy), and other iOS devices (hereinafter, the "Relevant Devices") available to Haystack. The Clone of the Relevant Devices is through February 24, 2025.[1]

Haystack, is the Plaintiffs' computer forensics expert, but Haystack agrees to be subject to and bound by the terms of the Stipulated Order and shall only conduct a search of the Relevant Devices based solely upon the search protocol ("Search Protocol"), more fully defined on **Exhibit A,** and collect the results. Although Haystack is the Plaintiffs' computer forensics expert, Haystack shall cooperate with Defendant's counsel and be fully transparent with the Defendant's counsel to verify that Haystack's search is limited to the Search Protocol. Except to the extent expressly authorized herein or as might be later ordered by the Court, Haystack is not permitted to conduct any searches or collect any data. Additionally, Haystack can use the results from any of the Relevant Devices, as well as other tools or resources available to Haystack to access the following web-based email accounts to make a forensic copy of the stored communications/data contained therein:

> markbalm202@gmail.com
> robertsteinnews@gmail.com
> GraceBeckwith@outlook.com
> harrissteinfeld@yahoo.com

---

[1] By agreeing to the terms of this Agreed Addendum to the Stipulated Protective Order, the Parties continue to reserve all rights to conduct discovery and seek production of information from each other under the Federal Rules of Civil Procedure. The Parties expressly agree that no party waives any rights concerning discovery as a result of agreeing to this Agreed Addendum to the Stipulated Protective Order. Furthermore, it is entered into for the sole purpose of expediting the search of Defendant's electronic devices.

>timvanbenthuysen@outlook.com
>nandini.patel@myyahoo.com
>arjunpatelphilly@outlook.com
>denissufolk@yahoo.com
>nandinipateltemple@outlook.com
>jack.maguir@yahoo.com
>danielle.vanbenthuysen@yahoo.com
>nandinipateltemple@yahoo.com
>tim.vanbenthuysen@yahoo.com

All data can be categorized as Content data and/or Artifact data. Content data includes all data generated by a human ("Content Data"), while Artifact data is automatically generated by cellular phones ("Artifact Data"). Hereinafter, at times the Content Data and Artifact Data may be collectively referred to as the "Search Results."

**II.      EXTRACTING DATA AND SEARCH TERMS**

Haystack shall utilize the Search Protocol to collect the Content Data from the Clones and for the identification and interpretation of relevant Artifact Data and provide a copy of the same to both the Plaintiffs' counsel and the Defendant's counsel.

One or more members of Haystack will perform the following analytic functions:

(a) Configure and/or use a variety of specialized software tools to simultaneously search, using only the Search Protocol, all areas of each Clone, including in-use space (allocated areas), slack space and unused space (unallocated areas), to identify Content Data and/or Artifact Data;

(b) Extract, compile and parse Content Data from Search Results;

(c) Sequester and exclude from the Search Results any data that is Attorney Client Privilege or work product information or reasonably should be considered Attorney Client Privilege or work product information. The Attorney Client Privilege or work product information shall include any communications between the Defendant and his counsel, if any and not make it available to the Plaintiffs. The Parties agree that if any part of the data, email or its attachments is responsive, the entire email and attachments must be produced, except the portions of any attachments that are attorney client privilege or work product and those portions must be withheld or

        redacted on the basis of privilege, work-product, or other protection;

(d)    Categorize and identify all of the Search Results that include healthcare information, data or communications between the Defendant and any healthcare professionals or medical providers as "PROTECTED HEALTH INFORMATION." All Protected Health Information is "HIGHLY CONFIDENTIAL" as defined below and "ATTORNEYS' EYES ONLY";

(e)    Extract and analyze Artifact Data from Search Results;

(f)    Produce identical copies of the Search Results to the Plaintiffs' counsel and the Defendant's counsel at the same time.

(g)    Provide the Certification attached hereto as Exhibit B or a certification in substantially similar form to the counsel for the Plaintiffs and Defendant, certifying that Haystack complied with this Agreed Addendum.

### III. LOCATION AND OTHER PROCEDURES

The analysis of the Clones will take place at Haystack. Haystack will abide by the Search Protocol and any other written amendments to the Search Protocol if any, that are jointly submitted by both the Plaintiffs' and Defendant's counsel and expressly confirmed in writing by both counsels to include additional search terms and criteria in the Search Protocol. Absent the foregoing, Haystack shall not deviate from the Search Protocol. Such agreed supplements if any, need not be submitted to the Court but may be submitted directly to Haystack.

### IV. CONFIDENTIAL INFORMATION & HIPAA INFORMATION

All information contained on Clones shall be classified as Confidential Information consistent with this Protective Order filed herein and Haystack shall comply with the Protective Order and owes a duty and obligation to both the Plaintiffs and Defendant to comply with the Protective Order.

Defendant shall provide a list of search terms that relate to attorney-client communications, and any data matching those search terms is to be excluded from the Search Results shared with the Plaintiff and included by Defendant on his privilege log. Except to the extent that the Defendant

timely claims certain data is subject to attorney-client privilege, all other Search Results shall be produced to the Plaintiff but be designated as "CONFIDENTIAL", "ATTORNEYS' EYES ONLY", or Highly Confidential and be subject to the provisions of this Protective Order.

**(A) Qualified HIPAA Protective Order:** The Parties agree that this Agreed Addendum to the Stipulated Protective Order will constitute a Qualified Protective Order under 45 C.F.R. 164.512(e). In accordance with the HIPAA Privacy Rule, this Protective Order allows for the disclosure and receipt of an individual's protected health information in the possession of Parties for the limited purpose of this Action. In accordance with the HIPAA Privacy Rule, this Protective Order specifically (a) prohibits the Parties and non-parties including Haystack from using or disclosing protected health information received in this case for any purpose other than this Action or as expressly stated herein; and (b) at the conclusion of this Action requires the Plaintiffs and Haystack to return to the Defendant or the destruction of all information designated as "Protected Health Information" (including all copies made). For electronically stored information, destruction will entail deletion from all databases, applications, and file systems so that the information is not accessible without the use of specialized tools or techniques typically used by a forensic expert. Protected Health Information shall be considered Highly Confidential and treated as such whether or not separately marked as Highly Confidential or Protected Health Information.

**(B) "Protected Health Information" Defined:** (a) information containing information that is or may be considered protected health information shall be designated as "Protected Health Information." (b) information designated as or including Protected Health Information should be designated as Highly Confidential, but failure to designate Protected Health Information as Highly Confidential will not impact the Parties' agreement that Protected Health Information should be treated as Highly Confidential. (c) "Protected Health Information" shall mean: (i) information

relating to the past, present, or future physical or mental health or condition of any individual, the provision or treatment of healthcare to any individual, or the past, present, or future payment for the provision of healthcare to any individual, which identifies the individual or with respect to which there is a reasonable basis to believe the information can be used to identify the individual; (ii) "protected health information" as such term is defined and protected by state or federal law, including but not limited to the Standards for Privacy of Individually Identifiable Information, 45 C.F.R. Parts 160 and 164, promulgated pursuant to the HIPAA; and prescriptions, prescription notes, prescription records, lab tests, prescription drug event reports, medical bills, billing codes, claims forms, charge sheets, medical records, medical charts, test results, notes, dictation, invoices, itemized billing statements, remittance advice forms, explanations of benefits, individual health insurance or government payor information, payment for individual healthcare services, checks, notices, requests, summaries, and includes all notes, reproductions, excerpts, summaries, compilations, extracts, abstracts, oral communications, or other documents or media that are based on or derived from protected health information regardless of form or format.

**(C) "Highly Confidential" Defined:** (a) Information or documents that are available to the public sector may not be designated as Highly Confidential. (b) Information or documents that qualify for designation as Highly Confidential under this Protective Order are Confidential Information of a highly sensitive nature, including but not limited to the following categories of non-public information, the public disclosure of which is either restricted by law or will cause imminent and material harm to the business, commercial, financial, or personal interests of the Producing Party and/or third party to whom a duty of confidentiality is owed: (i) non-public healthcare information, proscriptions, medical treatment plans, diagnosis, or Protected Health Information; (ii) financial information; or social security numbers; or (iii) any other Material that

the Producing Party believes warrants "Highly Confidential" treatment, including but not limited to Material the public disclosure of which is either restricted by law or will cause imminent and material harm to the personal interests of the Producing Party and/or third party to whom a duty of confidentiality is owed.

## V. INADVERTENT DISCLOSURE

The inadvertent or intentional disclosure by Haystack or any representative of Haystack of Confidential Information shall not be deemed a waiver in whole or in part of Defendant's claim of confidentiality, privilege, or protection under this Protective Order, either as to specific information disclosed or as to any other information relating thereto or on the same or related subject matter. Counsel for the Parties shall, in any event, upon discovery of inadvertent or intentional disclosure by Haystack, cooperate to restore the confidentiality and protection of the Confidential Information, or return or destroy privileged information upon request.

## VI. USE OF MATERIAL

Nothing in this Protective Order shall be construed as a waiver of any of the Defendant's rights, nor shall the production of the Clones be admission of liability. Additionally, nothing in this Protective Order shall prevent the parties from seeking to use relevant, non-privileged information derived from the inspection of any Relevant Device in connection with the trial, hearings, depositions, motions, memoranda, or other proceedings in this Action. Nor shall this Protective Order prevent the parties from obtaining from Haystack by way of testimony or affidavit, explanations of the process, procedure, or results used or obtained by Haystack.

## VII. DOCUMENTS PROTECTED FROM DISCOVERY

Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from

discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production or as may be contained on the Clones is not itself a waiver in this case or in any other federal or state proceeding. Additionally, compliance with this Protective Order shall not considered a waiver of the Defendant's constitutional rights or assertion of the Fifth Amendment.

**VIII.   DURATION OF THIS PROTECTIVE ORDER**.

This Protective Order shall survive the termination of this Action, and remain binding throughout, including but not limited to, final adjudication of any appeals and petitions for extraordinary writs, and the pendency of any matters related to this Action. The Court retains jurisdiction even after termination of this Action to enforce this Protective Order and to make such amendments, modifications, deletions, and additions as the Court may deem appropriate.

AGREED TO**:**

| | |
|---|---|
| */s/*  **Ian D. Mitchell** | */s/* **Kenneth A. Foisy** (per email auth. 11/21/25) |
| IAN D. MITCHELL | RALPH W. KOHNEN |
| ANDY J. DORMAN | KENNETH A. FOISY |
| | |
| **ATTORNEYS FOR PLAINTIFFS** | **ATTORNEYS FOR DEFENDANT** |